16 U.S. 252 (____)
3 Wheat. 252
The AMIABLE NANCY.
Supreme Court of United States.

*257 This cause was argued by Sergeant and Baldwin, for the appellants.
March 11th, 1818, STORY, Justice, delivered the opinion of the court. 
The jurisdiction of the district court to entertain *this suit, by virtue [*558 of its general admiralty and maritime jurisdiction, and independent of the special provisions of the prize act of the 26th of June, 1812, ch. 107. has been so repeatedly decided by this court, that it cannot be permitted again to be judicially brought into doubt.[(a)] Upon the facts disclosed in the evidence, this must be pronounced a case of gross and wanton outrage, without any just provocation or excuse. Under such circumstances, the honor of the country, and the duty of the court, equally require, that a just compensation should be made to the unoffending neutrals, for all the injuries and losses actually sustained by them. And if this were a suit against the original wrongdoers, it might be proper to go yet further, and visit upon them, in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered, that this is a suit against the owners of the privateer, upon whom the law has, from motives of policy, devolved a responsibity for the conduct of the officers *258 and crew employed by them, and yet, from the nature of the service, they *559] can scarcely ever be able to secure to themselves an *adequate indemnity in cases of loss. They are innocent of the demerit of this transaction, having neither directed it, nor countenanced it, nor participated in it in the slightest degree. Under such circumstances, we are of opinion, that they are bound to repair all the real injuries and personal wrongs sustained by the libellants, but they are not bound to the extent of vindictive damages. While the government of the country shall choose to authorize the employment of privateers in its public wars, with the knowledge that such employment cannot be exempt from occasional irregularities and improper conduct, it cannot be the duty of courts of justice, to defeat the policy of the government, by burdening the service with a responsibility beyond what justice requires, with a responsibility for unliquidated damages, resting in mere discretion, and intended to punish offenders.
As the respondents have not appealed from the decree of the circuit court, that decree, so far as it allows damages against them, is not re-examinable here. And the only inquiry will be, whether any of the items allowed by the district court, were improperly rejected the circuit court.
And first, as to the item of $1220 for losses sustained in the sale of the cargo at Antigua. This loss is said to have been occasioned partly by the deterioration of the corn, by sea damage, the mixing of the damaged with the sound corn by the improper conduct of the crew of the Spider brig of war, and partly by a fall of the price of corn, during the detention of the vessel at Antigua. We are of opinion, that this item was properly rejected. *560] The injury to *the corn was in no degree attributable to the improper conduct of the officers and crew of the privateer. The vessel was actually bound to Antigua, at the time when she was met by the privateer, under a necessity occasioned by stress of weather, and the fall of the market there is precisely what would have arisen, upon the arrival of the vessel, under ordinary circumstances. Unless, therefore, the sale of the corn was compelled at Antigua, solely by the misconduct of the privateer (which, in our opinion, was not the case), the claim for such loss cannot be sustained.
Another item is, $3500, for the loss of the supposed profits of the voyage on which the Amiable Nancy was originally bound. In the opinion of the court, this item also was properly rejected. The probable or possible benefits of a voyage, as yet in fieri, can never afford a safe rule by which to estimate damages, in cases of a marine trespass. There is so much uncertainty in the rule itself, so many contingencies which may vary or extinguish its application, and so many difficulties in sustaining its legal correctness, that the court cannot believe it proper to entertain it. In several cases in this court, the claim for profits has been expressly overruled; and in Del Col v. Arnold (3 Dall. 333) and The Anna Maria (2 Wheat. 327), it was, after strict consideration, held, that the prime cost, or value of the property lost, at the time of the loss, and in case of injury, the diminution in value, by reason of the injury, with interest upon such valuation, afforded the true measure for assessing damages. This rule may not secure a complete *561] *indemnity for all possible injuries; but it has certainty, and general applicability, to recommend it, and in almost all cases, will give a fair and just recompense.
The next item is $2127.60, for the ransom of the vessel and cargo, and *259 the payment of the costs of court. The evidence upon this head is not very satisfactory in its details. It is asserted, that the vessel was seized for the want of papers, but whether as prize of war, or to enforce a municipal forfeiture, is not distinctly stated; and no copy of the proceedings of the court is produced, to clear up a single doubt or obscurity. Nor does it appear, whether the compromise was made, before or after the libel was filed; and it is admitted, that it was made, without taking the advice of counsel, upon the mere opinion of a merchant at Antigua, who supposed that a condemnation would certainly ensue. Upon what legal grounds this opinion could be reasonably entertained, it is extremely difficult to perceive. Assuming that the vessel and cargo were seized as prize of war, it cannot for a moment be admitted, that the mere want of papers could afford a just cause of condemnation. It might be a circumstance of suspicion; but explained (as it must have been) by the preparatory examinations of the officers and crew, and by the fact of a voluntary arrival, it is difficult to suppose, that there could be any judicial hesitation in immediately acquitting the property. And the furthest that any prize court could, by the utmost straining, be presumed to go, would be to order further proof of the proprietary interest. It would be *the highest injustice to the British courts, to suppose [*562 that the mere want of papers, under such circumstances, could draw after it the penalty of confiscation. We do not, therefore, think, that the ransom was justifiable or reasonable. The utmost extent of loss to which the owner was liable, was the payment of the costs and expenses of bringing the property to adjudication; and for such costs and expenses, so far as they were incurred and paid, the owner is now entitled to receive a recompense. In this respect, the decree of the circuit court ought to be amended.
The item for the supercargo's commission was also properly rejected. It does not appear, with certainty, to what sum he was entitled; and under the circumstances, if lost (which is not satisfactorily shown), the commissions were not lost by any act for which the respondents are liable. The sum allowed for the travel, attendance and expenses of the supercargo in procuring testimony, by the circuit court, is, in our judgment, an adequate compensation.
The sum of $44 was (probably by mistake) deducted by the circuit court from the expenses at Antigua. This sum is to be re-instated.
To the decree of the circuit court there are, consequently, to be added the following sums, viz: For expenses and costs of court at Antigua, $542.21. The loss on the exchange to pay that sum (say), $188. The short allowance of expenses, $44. In the whole, amounting to the sum of $774.21, on which interest, at the rate of six per *cent., is to be allowed, from [*563 the time of payment up to the time of this judgment. And the decree of the circuit court is to be reformed accordingly.
Decree reformed.
NOTES
[(a)] See 2 Wheat. Appendix, note 1, p. 5. The jurisdiction of the admiralty, as a court of prize, has been recently reviewed in England, on an application to the court of chancery for a prohibition, in which it was determined, that this jurisdiction does not depend upon the prize act or commission, nor cease with the cessation of hostilities; but that it extends to all the incidents of prize, and to an indefinite period after the termination of the war. Ex parte Lynch, 1 Madd. 15.